# Standbridge *versus* Catanach.

1. Where a contract was made by the deceased member of a firm, in an action by the surviving partner, a party to the contract is incompetent as a witness under the provisions of the Act of April 15th 1869, Pamph. L. 30.

2. A surviving partner is included within the exception to the Act of 1869, which provides that the act shall not apply to actions " where the assignor of the thing or contract in action may be dead."

3. A surviving partner is as clearly included within the mischief by the death of the former owner " of the thing or contract," as one is who claims by a written assignment from one who is dead, and his adversary cannot be permitted to testify to what passed between him and his deceased partner.

4. Hanna *v.* Wray, 27 P. F. Smith 27, followed.

January 29th 1877. Before AGNEW, C. J., SHARSWOOD, MER-
CUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia
county:* Of January Term 1876, No. 299.

Assumpsit brought by Adam Catanach, surviving partner of the
firm of Catanach & Son, against George O. Standbridge, surviving
partner of the firm of Standbridge Brothers, for the balance of a
bill for work done in constructing and placing a case for an organ
in a church.   The only question in the case was, on whose account
the work was done.   The plaintiff alleged that the work was done
for the defendant's firm.   The defendant contended that it was done
for his father, John C. B. Standbridge, who was for many years an
organ builder; while, at the same time, the firm of Standbridge
Brothers was composed of his two sons, John G. and George O.
Standbridge.

Upon the trial the plaintiff called his foreman, who testified that
he knew Standbridge Bros., organ builders; that he was present at
Archibald Catanach's house at an interview between said Catanach
and John G. Standbridge, of defendant's firm; that John G. Stand-
bridge had plans for an organ case, and he (witness) went over the
plans and made an estimate of the cost; that he heard John G.
Standbridge say that the organ case was to be built for him and his
brother, Standbridge Bros.; that he afterwards saw John G. Stand-
bridge, who said the estimates were too high, and after consultation
they were reduced; that he heard nothing further of the matter
until he was ordered to go ahead with the work; was then referred
to John G. Standbridge and George O. Standbridge; he also saw
J. C. B. Standbridge, but took all instructions from John G. Stand-
bridge; he saw all the Standbridges at the church during the pro-
gress of the work; that the case was furnished according to contract.

The defence then called the defendant, George O. Standbridge,
and offered to prove by him "that the defendant's firm never
ordered the case which is the subject of this suit, and that the same
was not, in fact, delivered to them," which was objected to, and
the objection sustained, the court ruling "that the evidence of
the plaintiff showing that the deceased partner of plaintiff having
made the contract, the testimony is excluded in so far as it relates
to any contract made with said deceased partner."

The defendant then gave evidence that the organ was in fact built
by his father under a written contract with the church, which con-
tract included the organ case.   The firm of the defendant built a
part of the organ for their father, because he had not the facilities
for building the whole of it.   The portion the firm built did not
include the organ case, and their father paid them for the work
they did.

No points were submitted, and the court, Ludlow, P. J., charged
the jury :—

[Standbridge *v.* Catanach.]

" The question is one of fact for you to decide. If the contract was made by Standbridge Bros., they are liable; if made by the father, they are not. You must consider the testimony and decide the question. If the jury believe, under the evidence, that the contract was made with Standbridge Bros., the verdict must be for the plaintiff; otherwise, for defendant."

The verdict was for the plaintiff for $538.34, on which judgment was entered.

Defendant took this writ, and the error assigned was the refusal to admit the testimony of defendant on the ground that as the evidence disclosed that the contract was made by the deceased partner of the firm, the defendant could not, under the provisions of the Act of April 15th 1869, be permitted to testify.

*Thomas Mitchell* and *Thomas A. Gummey*, for plaintiff in error.—The Act of 1869 declares that "no interest nor policy of law shall exclude a party or person from being a witness in any civil proceeding; provided, * * * this act shall not apply to action by or against executors, administrators or guardians, nor where the assignor of the thing or contract in action may be dead." The question in the present case turns upon the meaning of the words " the assignor of the thing in action." In the construction of a statute, the language of the legislature should be interpreted as meaning what it plainly expresses. It is the words of the statute free of conjecture which are to determine the intention of the maker: Olmsted's Case, Brightly R. 1; Fisher *v.* Blight, 2 Cranch 358; Taylor *v.* Kelly, 3 Weekly Notes 207. It is submitted, therefore, that it cannot be said that the assignor of the thing or contract in action is dead, unless the thing or contract in action has been assigned and he who assigned it has since died. How can it be said that a deceased partner of a firm is the assignor of his surviving partner? The latter succeeds, as to third parties at least, to all the rights and liabilities of the firm, not by assignment of any kind, but by right of survivorship. It is true, this reasoning is opposed to Hanna *v.* Wray, 27 P. F. Smith 27; but admitting the conclusion in that case, we submit the facts there did not bring the case within the words of the act.

*E. G. Platt* and *Samuel Dickson*, for defendant in error.—It was settled in Karns *v.* Tanner, 16 P. F. Smith 297, that when a party to the thing or contract in action is dead, and his rights have passed by his own act or the law to another who represents his interest, the surviving party shall not testify to matters occurring in the lifetime of the adverse party.

In Hanna *v.* Wray, 27 P. F. Smith 27, the rule laid down in Karns *v.* Tanner was held to be applicable to the case of a suit against surviving partners, and the adverse party held incompetent.

[Standbridge *v.* Catanach.]

In Gavit *v.* Supplee, 2 Weekly Notes 561, the defendant was held incompetent, suit having been brought by a surviving partner, on the authority of Hanna *v.* Wray.

Archibald Catanach died in January 1873; the suit·was brought by his surviving partner; the contract was made and the work done in 1870.

Under these circumstances the defendant was offered generally as a witness; but the court only·excluded his testimony so far as related to any contract made with deceased partner. This was clearly more than the defendant was entitled to under the above cases.

The judgment of the Supreme Court was entered February 5th 1877,

PER CURIAM.—The case of Hanna *v.* Wray, 27 P. F. Smith 27, which we are asked to overrule, was decided by the whole court, and we are now as unanimous in sustaining it. There the transaction was between the deceased partner and Wray, the opposite party. It was held that Wray was incompetent as a witness upon the authority of Karns *v.* Tanner, 16 P. F. Smith 297, a case that has been repeatedly followed as interpreting the Act of 15th April 1869. It was said in Hanna *v.* Wray, " that case, therefore, rules this, for here, by operation of law, the rights and liabilities of Mc-Vay devolved upon Hanna, the surviving partner. There is clearly no difference in principle between a devolution of McVay's estate upon another directly by law, on the happening of a certain event; and its devolution by a sale at law (Tanner's case). In either case it is the act and operation of the law, really more direct in the former case than in the latter, which required certain legal instrumentalities, to wit: the executions, in order to produce the result." It is argued that this is a departure from the letter of the act, and is a judicial rule affording no certainty, and Taylor *v.* Kelly, 3 Weekly Notes 206, is referred to as giving the rule that the letter of the statute must be maintained. This is incorrect. Taylor *v.* Kelly does not reject what is a judicial necessity, that of interpreting the language of the law-giver. It recognised Karns *v.* Tannar, which of necessity had to interpret an obscure clause, and puts the exclusion of the witness upon the words *executor* and *administrator*. These words are legally demonstrative that in every case where either is a party one of the parties to the litigation is dead, and hence the majority of the court concluded that in every such case the interpretation simply followed the letter. The minority conceding this as to parties to the action thought that exclusion does not follow when the witness is a disinterested third person, whose only relation to the case is a mere affinity. That controversy has no bearing on this case, for when we reach the next clause, " nor where the assignor of the thing or contract in action may be dead,"

[*Standbridge v. Catanach.*]

we meet a different feature. The word "assignor," unlike the the words executor and administrator, does not import an exact thought. The inquiry arises immediately, who is the assignor of a thing or of a contract? Does the word necessarily import one who has assigned by a writing under his hand? Or may his right or title pass by other means? There an assignor imports an assignee, but this is not expressed. Is the assignee one who takes by some formal legal document, or is he one who has taken the title otherwise, and now stands in the place of the former owner of the thing or the contract, clothed with all his rights, and, therefore, entitled to all his knowledge as a witness? He is as clearly included within the mischief, by the death of the former owner, as one is who claims by a written assignment from one who is dead. If the adversary shall not testify in one case, on what principle shall he testify in the other? He who claims by the act or by the operation of the law is, therefore, as fully within the mischief, and within the true intent of the clause, as one who claims by writing directly from the former owner. In either case his adversary should not be permitted to testify to what passed between him and the deceased owner, whose lips are closed. It would be rank injustice, yea, iniquity, to permit it. This is the principle of Karns *v.* Tanner and Hanna *v.* Wray, and it is a plain one, which the profession can easily understand, and which hair-splitting alone can confuse or confound.

Judgment affirmed.